USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 03/23/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUAN PABLO CHAVEZ,

                Plaintiff,

                v.

SERGEANT WILLIAM FINNEY, OFFICER
STEPHEN STREICHER, and OFFICER
ANTHONY TORTORICE,

                Defendants.

No. 19-CV-4109 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Juan Chavez, proceeding *pro se*, brought this action against three police officers of the Port Authority of New York and New Jersey: William Finney, Stephen Streicher, and Anthony Tortorice (collectively, "Defendants"). Plaintiff's claims center on an encounter at the Port Authority Bus Terminal that culminated in his receipt of a disorderly conduct summons and arrest on an unrelated bench warrant. Now before the Court is Plaintiff's motion to preclude evidence and Defendants' motion for summary judgment. For the reasons that follow, Plaintiff's motion is denied and Defendants' motion is granted in part and denied in part. Specifically, Plaintiff's claim that he was retaliated against for his speech by being issued the summons survives summary judgment—but the rest of his claims, including those that challenge his arrest, fail.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from Defendants' Rule 56.1 Statement, the Affidavit of Matthew Malysa and attached exhibits, Defendants' March 22 supplemental brief and attached exhibit, and Plaintiff's Amended Complaint. The facts are undisputed unless otherwise noted.

Defendants Stephen Streicher and William Finney are officers of the Port Authority Police Department.  On April 20, 2019, Streicher was on patrol at the Port Authority Bus Terminal when he allegedly witnessed Plaintiff "yelling and cursing" at Finney.  Malysa Aff. Ex. I ("Streicher Aff.") ¶¶ 2-5.  Streicher observed Finney telling Plaintiff "to stop yelling and causing a disturbance," but asserted that Plaintiff's "conduct persisted."  *Id.* ¶ 6.  When Streicher approached, Finney ordered him to issue a summons to Plaintiff for disorderly conduct.  *Id.* ¶ 7.  The summons that was issued read: "AT TPO [Chavez] did intentionally cause Public Alarm by yelling and screaming loudly inside of the Port Authority Bus Terminal causing a crowd to gather.  [Chavez] did not leave.  After several requests to do so."  *Id.* ¶ 8; Malysa Dec. Ex. J ("Summons").

While Streicher was issuing the summons, the "police desk" ran a warrant check, which revealed that Plaintiff had a bench warrant from the Queens County Criminal Court dated March 19, 2013.  Streicher Aff. ¶ 9; *see* Malysa Aff. Ex. L at 1 (records from Queens County Criminal Court) ("Case Records").  The warrant had been issued after Plaintiff had failed to appear on a ticket for fare-beating, or entering the subway without paying the fare.  N.Y. Penal L. § 165.15-3; *see* Case Records at 3.  Streicher asserts that Plaintiff was then placed "under arrest on the basis of the bench warrant and not the summons for disorderly conduct."  Streicher Aff. ¶ 11; *see* Malysa Aff. Ex. M at 4 (Port Authority Event Report with a "notes addendum" reading, "suspect has a warrant out of queens") ("Event Report").  When Plaintiff was brought to Queens Central Booking, he allegedly began "yelling and acting in a belligerent manner"; officers told Streicher that they would not process Plaintiff's warrant and that Streicher needed to transport Plaintiff to a hospital because he was "acting like an emotionally disturbed person."  Streicher Aff. ¶¶ 13-16; *see* Event Report at 4.  Streicher took Plaintiff to Elmhurst Hospital, where he remained for about one hour until he was relieved by other Port Authority Officers.  Streicher Aff. ¶ 16.

The next day, Plaintiff was remanded to the custody of the New York City Department of Correction.  Event Report at 4.  Records from the Queens County Criminal Court indicate that on April 21, 2019, the court ordered a mental health evaluation under § 730.30 of the New York Criminal Procedure Law.  Case Records at 2.  On May 2, 2019, Plaintiff was found unfit based on the evaluation results and the case was dismissed.  *Id.*  Plaintiff was then "committed" to the Office of Mental Health.  *Id.*  State criminal court records also indicate that Plaintiff failed to appear for his disorderly conduct summons on June 28, 2019, that a bench warrant was subsequently issued, and that the case remains pending.  *See* March 22 Br. Ex. A.

Plaintiff offers a different account of the April 20 incident.  He disputes raising his voice "above mezzo piano" at any point before what he refers to as "the suppression period" of the encounter.  Opp. MOL at 4.  Instead, he alleges that while he was "participating in a worship, gospel, on 42nd Street, Manhattan at a piano open to the public," Finney "approached Plaintiff aggressively, accosting him and stating 'You know what your problem is?  You talk too god damn much.'"  Amended Complaint ("Compl.") at 11.  After Plaintiff "respectfully responded [that] he didn't understand," Finney allegedly conducted an "unreasonable" search and seizure "outside the judicial process, where the exigencies of the situation in no way made the actions imperative."  *Id.*  Plaintiff asserts that "no conditions existing prior to the officers['] stop established reasonable suspicion or probable cause, and what the officers discovered during their unconstitutional detainment and arrest is not sufficient to establish retroactive probable cause."  *Id.* at 12.  He further asserts that Finney's "intentions were to willfully disturb and interrupt the Plaintiff's assemblage met for religious worship."  *Id.* at 12.  Although Plaintiff agrees that Defendants "sent him to Queens on a 2013 warrant," *id.*, he appears to suggest that the warrant was invalid because the underlying charge had been dismissed, *see id.* at 3 ("The psychs at the Queens 730 screening in

2019 told Plaintiff he was facing 13 years in a psych ward for a purported train hopping violation from 2013 that had already been dismissed.").  Plaintiff also alleges that Defendants "told many witness[es] and employees of Queen[s] Court that he was a guilty criminal and a faggot"; that Defendants "stole a . . . $2 bill" and violated his rights in order to "promote themselves in their gang of tortfeasors and charlatans"; and that the "branding" on Defendants' uniforms "caused confusion as to the origin and sponsorship of their goods/services." *Id.* at 14-15.

Plaintiff claims that Defendants violated the Fourth Amendment's protection against unreasonable searches and seizures; subjected him to false arrest, false imprisonment, and malicious prosecution; discriminated against him on the basis of his race, religion, and socioeconomic status; violated his First Amendment rights of free exercise and free speech; placed him in double jeopardy; violated his due process rights; violated his Sixth Amendment rights; violated his Eighth Amendment rights; and violated the Eleventh Amendment. *Id.* at 13-15.  He also raises a slander claim, RICO and Hobbs Act claims, and a Lanham Act claim. *Id.* at 14-15.[1]

## II.    Procedural History

Plaintiff filed the original complaint in this action on May 7, 2019; he then filed the Amended Complaint, which is the operative complaint, on September 13, 2019.  On October 9, 2019, Plaintiff was granted leave to proceed *in forma pauperis*.  On January 15, 2020, this Court dismissed Plaintiff's claims against all Defendants except for: (1) Sergeant William Finney; (2) an officer with the shield number 3281, who proved to be Officer Streicher; and (3) an officer with the shield number 3271, who proved to be Officer Anthony Tortorice.  On July 19, 2021, the Court denied without prejudice Plaintiff's request for *pro bono* counsel.

---

[1] Plaintiff alleges that his injuries include "wrist injury/nerve damage from hand cuffs" that "resulted in pain and lack of sensation for nearly 3 weeks."  Compl. at 3.  He does not, however, raise an excessive force claim.

After discovery closed, Defendants moved for summary judgment.[2]  The Court subsequently ordered Defendants to supplement their briefing to address certain claims in Plaintiff's Amended Complaint.  Defendants filed their supplemental letter briefs on February 11, 2022 and March 22, 2022.

Finally, on July 23, 2021, Plaintiff filed a document titled "Motion to Suppress," in which he sought to preclude certain documents that Defendants had provided to him after the close of discovery and on which Defendants rely in their summary judgment motion.  Defendants responded to that motion after being so ordered by the Court.

## LEGAL STANDARD

A court may grant summary judgment if the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).[3]  "A fact is material if it might affect the outcome of the suit under the governing law," and it is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In addition to presenting evidence establishing that there is no genuine dispute of material fact, a moving party may also be entitled to summary judgment if the nonmoving party bears the burden of proof and the moving party shows "that there is an absence of evidence [in the record] to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When the moving party has asserted facts showing that it is entitled to judgment, the opposing party must "cit[e] to

---

[2] As required by Local Civil Rule 56.2, Defendants served on Plaintiff a "Notice to *Pro Se* Litigant Who Opposes a Motion for Summary Judgment" and attached the texts of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1.

[3] Unless otherwise noted, case quotations omit all internal citations, quotations, alterations, and footnotes.

particular parts of materials in the record" or "show[ ] that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).

The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).  It must also "read the pleadings, briefs, and opposition papers of *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest."  *Rivera v. Goulart*, No. 15-cv-2197 (VSB), 2018 WL 4609106, at *2 (S.D.N.Y. Sept. 25, 2018).  "Nevertheless, proceeding *pro se* does not otherwise relieve a plaintiff from the usual requirements of summary judgment, and a court cannot credit a plaintiff's merely speculative or conclusory assertions."  *Hamilton v. Countant*, No. 13-cv-0669 (RA), 2016 WL 881126, at *3 (S.D.N.Y. Mar. 1, 2016).

Ordinarily, the "facts set forth in a moving party's statement [of undisputed facts] will be deemed admitted unless controverted by the opposing party's statement."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 72 (2d Cir. 2001).  That said, a court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement."  *Id.* at 73.  In particular, "where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions."  *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009).  This Court will exercise such discretion and "conduct[ ] an independent review of all of the evidence submitted . . . so as to ascertain whether the record actually reveals any material, disputed issues of fact."  *Id.*

## DISCUSSION

### I.     Plaintiff's Motion to Preclude Evidence Is Denied

Before turning to Defendants' summary judgment motion, the Court addresses Defendants'

"submission" of July 20, 2021, in which they sent Plaintiff a case file from the Queens County

District Attorney's Office—corresponding to Exhibit K of the Malysa Declaration—and records

from the Queens County Criminal Court—Exhibit L of the Malysa Declaration.   When

transmitting these documents, Defendants cited Federal Rule of Civil Procedure 26(e)(1)(A),

which provides that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement

or correct its disclosure or response . . . in a timely manner if the party learns that in some material

respect the disclosure or response is incomplete or incorrect."   Plaintiff filed a "motion to suppress"

these documents, arguing that their submission was untimely given the January 2021 close of

discovery.   Plaintiff's motion is better understood as a motion to preclude pursuant to Federal Rule

of Civil Procedure 37(c)(1), which states that if "a party fails to provide information or identify a

witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness

to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless."   The Court declines to preclude the use of these documents.

According to Defendants, they received these documents in December 2020 and February

2021, *see* Opp. to Mot. to Preclude at 2—but did not send them to Plaintiff until July 2021, well

after the close of discovery, *see* Mot. to Preclude at 2.   Defendants argue that these documents are

public records that did not need to be produced at all.   Although it is true that "discovery need not

be required of documents of public record which are equally accessible to all parties," *Bey v. City

of New York*, No. 01-cv-8906 (LMM) (RLE), 2010 WL 3910231, at *4 (S.D.N.Y. Sept. 21, 2010),

as a practical matter, these documents were not in fact equally accessible to Plaintiff, particularly

given his *pro se* and *in forma pauperis* status and the unequal positions of the parties with respect to obtaining these documents. *See, e.g.*, *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prod., Inc.*, No. 19-cv-3766 (GHW), 2020 WL 7342724, at *10 n.4 (S.D.N.Y. Dec. 11, 2020) (rejecting an argument that plaintiffs did not need to produce public documents because "although those filings may have been accessible to the defendants, at least in theory, the plaintiffs were undeniably in the best position to identify and produce it").

But even assuming that these documents were not disclosed in a timely manner consistent with Rule 26, any such violation is harmless because it is undisputed that Plaintiff had knowledge of the information contained in both documents such that he cannot have been unfairly surprised by them. There is little question, for instance, that Plaintiff should have been aware of the contents of the court records in his own case. *See Bey*, 2010 WL 3910231, at *5. Nor can the failure to produce the District Attorney case files plausibly have "sandbagged" Plaintiff, *id.*: they contain only information already known to him, including basic identifying facts such as his date of birth and physical characteristics; the narrative of the officer who issued him the appearance ticket; the appearance ticket itself; and other documents containing information such as the circumstances of the alleged offense and the date of his ordered appearance. *See* Malysa Dec. Ex. K.

Accordingly, the Court declines to preclude the use of these exhibits.

## II.   Defendants' Motion for Summary Judgment Is Granted in Part and Denied in Part

Plaintiff's argument in opposition to summary judgment reads, in its entirety:

It appears that no opposition is necessary due to material facts in dispute. For example, Plaintiff never raised his voice above mezzo piano until they were in what Chavez calls the suppression period. Chavez managed to get both of the trafficking officers to say Fruit of the Poisonous Tree in perfect unison. Even with the current extension of time plaintiff has only had one full read through of Defendant's accompaniment and in light of his birthday ifp status needs more time than that. The responses from Finny, Torture & Striker are incoherent and no reasonable person could understand what they're saying. Finally, discovery needs to be

reopened in order to ask questions of Torture & Striker.  For example, what was Plaintiff yelling?  How long was he yelling for?

Opp. MOL at 4.  Plaintiff's position that "no opposition is necessary due to material facts in dispute" misstates the law.  Although it is true that the existence of genuinely disputed material facts precludes summary judgment, if Defendants present evidence that there are no such facts in dispute, Plaintiff has the obligation to present evidence of his own that rebuts Defendants' evidence. That said, the Court exercises its direction to excuse Plaintiff's failure to file a Rule 56.1 statement and looks to the record for evidence that may refute Defendants' factual assertions.  In so doing, the Court considers the factual allegations in Plaintiff's Amended Complaint, which were sworn to under penalty of perjury, to the extent they meet the other requirements for an affidavit under Rule 56(c)(4).  Compl. at 7; *see Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002); *Neal v. Wilson*, No. 15-cv-2822 (RA), 2017 WL 4129635, at *7 (S.D.N.Y. Sept. 15, 2017); Fed. R. Civ. P. 56(c)(4).

As an initial matter, the Court dismisses all claims against Tortorice because the record contains no evidence of Tortorice's personal involvement.  *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.").  Accordingly, the following analysis applies only to Defendants Finney and Streicher.

### A.      Summary Judgment Is Granted in Part and Denied in Part on Plaintiff's First Amendment Claims

Plaintiff asserts that Defendants infringed on his First Amendment rights to free speech and free exercise.[4]  The Court concludes that this claim may proceed only to the extent Plaintiff

---

[4] Plaintiff mentions the right of assembly, but offers no evidence that he was exercising this right by gathering with other individuals.  He further asserts a violation of his right to petition for redress of grievances—but alleges that this right was violated at Elmhurst Hospital, which does not implicate the remaining Defendants.  *See* Compl. at 13.

alleges that he was retaliated against for his speech when Defendants issued the disorderly conduct summons and thus instituted criminal proceedings against him.

Because Plaintiff does not argue that any law or policy is unconstitutional as applied to his speech or religious exercise, the Court construes his First Amendment claims as retaliation claims. A plaintiff asserting retaliation "must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). The requisite injury can be either "[c]hilled speech" or "some other concrete harm." *Id.* Initiation of criminal proceedings is a concrete injury. *See, e.g.*, *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015). Ordinarily, "a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury" in which retaliatory motive is "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citing *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 285-86 (1977)). That said, the existence of probable cause to arrest defeats a retaliatory arrest claim even when the officer had a retaliatory motive. *See id.* at 1723-28.

Plaintiff's averments in his Amended Complaint raise issues of fact that preclude summary judgment on his retaliation claim—albeit only to the extent it turns on the issuance of the disorderly conduct summons. Plaintiff asserts that he was engaging in religious worship when the incident began. Compl. at 11. Worship is protected speech, *see Widmar v. Vincent*, 454 U.S. 263, 269 (1981), and Defendants do not suggest that such speech is subject to lawful restrictions at the Port Authority Bus Terminal. Plaintiff then asserts that Finney told him, "You talk too god damn much,"

thereby initiating the encounter that led to the summons.  Compl. at 11.[5]  The substance of these comments and the temporal proximity between them and the issuance of the summons for disorderly conduct is evidence of improper motive and a causal connection between that motive and the adverse action.  *See Bartels v. Inc. Vill. of Lloyd*, 751 F. Supp. 2d 387, 399 (E.D.N.Y. 2010) ("[T]he particularized evidence of improper motive may include expressions by the officials involved regarding their state of mind."); *Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").  Finally, issuance of the summons and the resulting criminal proceeding is a concrete harm because "it subjected [Plaintiff] to a state action."  *Smith*, 782 F.3d at 100; *accord Schoolcraft v. City of New York*, 133 F. Supp. 3d 563, 573 (S.D.N.Y. 2015) (describing retaliation injuries such as the imposition of "traffic tickets soon after protected speech" and the "imposition of criminal charges after protected speech").[6]

Because there is a genuine factual dispute as to whether Defendants had probable cause to issue Plaintiff a disorderly conduct summons, Defendants cannot avail themselves of that defense. "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution

---

[5] "A single witness's sworn testimony . . . is enough to raise a genuine issue of fact precluding summary judgment." *Bradshaw v. City of New York*, 855 Fed. App'x 6, 9 (2d Cir. 2021).  Indeed, in cases such as this one, where "the only direct evidence available . . . centers on what the defendant allegedly said or did," where "the defendant will rarely admit to having said or done what is alleged," and where "witnesses are by no means available, the issue . . . becomes one of assessing the credibility of the parties," making a plaintiff's affidavit critical evidence.  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998) (holding that a plaintiff's uncorroborated affidavit was sufficient to defeat summary judgment on an employment discrimination claim).

[6] The Second Circuit has left open the question of whether emotional and psychological harm, which Plaintiff alleges, can establish the requisite injury in a First Amendment retaliation claim.  *See Zherka v. Amicone*, 634 F.3d 642, 646-47 (2d Cir. 2011).  Some district judges in this Circuit have since answered that question in the affirmative.  *See, e.g., Doe v. City of New York*, No. 18-cv-0670 (ARR) (JO), 2018 WL 3824133, at *13-15.  Because the issuance of the summons is a sufficient concrete harm for Plaintiff's claim to survive summary judgment, the Court need not consider whether the emotional distress Plaintiff alleges he suffered could act as an additional concrete harm.

in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A person is guilty of disorderly conduct under New York law when he (among other things) "makes unreasonable noise"; "uses abusive or obscene language" in a public place; or "congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."  N.Y. Penal L. § 240.20.  According to Defendants, Plaintiff was yelling, cursing, and failing to obey commands to cease that conduct and to leave.  Streicher Aff. ¶¶ 2-6; Summons.  But according to Plaintiff, he was engaging in worship and responding to Defendants "respectfully."  Compl. at 11.  The Court cannot resolve this factual dispute.  *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("Credibility assessments [and] choices between conflicting versions of the events . . . are matters for the jury, not for the court on a motion for summary judgment.").  Instead, construing the facts in the light most favorable to Plaintiff, he was not making unreasonable noise, using obscene language, disobeying lawful orders to leave, or exhibiting any other conduct that would have supplied probable cause to issue Plaintiff a summons for disorderly conduct.  Nor do Defendants appear to argue that they are entitled to qualified immunity on this aspect of Plaintiff's First Amendment claim.  *Compare* MOL at 19 (arguing that "[f]or all the reasons set forth *supra*, Defendants acted in an objectively reasonable manner and are entitled to qualified immunity" on Plaintiff's Fourth Amendment claim for arrest without probable cause), *with id.* at 20-21 (arguing for dismissal of Plaintiff's First Amendment claim on the ground that he failed to state a claim, not on the ground of the reasonableness of Defendants' actions in issuing the summons).

By contrast, the Court finds that summary judgment is warranted on Plaintiff's retaliation claim to the extent it challenges his arrest, because, as Defendants rightly argue, the discovery of the bench warrant supplied probable cause to arrest Plaintiff.  "[W]hen an arrest is made pursuant

to a facially valid warrant, there is a presumption that it was made with probable cause." *Justice v. Kuhnapfel*, 985 F. Supp. 2d 334, 339 (E.D.N.Y. 2013) (citing *Southerland v. Garcia*, 483 Fed. App'x 606, 608 (2d Cir. 2012)); *accord Jimenez v. City of New Rochelle*, No. 19-cv-2525 (VB), 2021 WL 1178090, at *5 (S.D.N.Y. Mar. 29, 2021) (collecting cases holding that an officer's discovery of a bench warrant provides probable cause to arrest for the open warrant); *see United States v. Miller*, 265 Fed. App'x 5, 7 (2d Cir. 2008) ("When an officer learns from a computer database . . . that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person.").

Defendants have produced evidence that they discovered an outstanding warrant for Plaintiff's arrest and that they arrested Plaintiff solely on the basis of this warrant.  Streicher Aff. ¶ 11; Event Report at 4.  Plaintiff appears to dispute the validity of the warrant when he alleges that "psychs" at the Elmhurst hospital told him that the underlying charge had "already been dismissed."  Compl. at 3.  But the Court may not consider these hearsay statements for the truth of the proposition that the charge had been dismissed.  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").  In any event, court records indicate that the underlying charge was not dismissed until May 2019—well after the April 2019 arrest.  *See* Case Records at 2.  Plaintiff also describes the underlying charge as "frivolous," Compl. at 13, but he does not allege any facts in support of this conclusory assertion.  Thus, "the Court agrees that there was a[] . . . basis for finding probable cause [to arrest Plaintiff] once the warrant was discovered."  *Omor v. City of New York*, No. 13-cv-2439 (RA), 2015 WL 857587, at *5 (S.D.N.Y. Feb. 27, 2015).  This defeats Plaintiff's

retaliatory arrest claim, regardless of whether Defendants had a retaliatory animus in arresting him. *See Nieves*, 139 S. Ct. at 1723-38.[7]

Accordingly, summary judgment is denied on Plaintiff's retaliation claim to the extent it turns on his summons, but granted to the extent it turns on his arrest.

### B.   Summary Judgment Is Granted on Plaintiff's False Arrest, False Imprisonment, and Malicious Prosecution Claims

The Court construes Plaintiff's Amended Complaint as raising claims of false arrest, false imprisonment, and malicious prosecution, under both the Fourth Amendment via 42 U.S.C. § 1983 and state law.  To the extent these claims turn on Plaintiff's arrest, summary judgment is granted because there is no genuine dispute that Defendants had probable cause to arrest.  To the extent these claims turn on Plaintiff's alleged detention prior to his arrest, summary judgment is granted because Plaintiff has failed to allege that he was confined during that period.

A § 1983 false arrest claim "derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).  "In analyzing § 1983 claims for unconstitutional false arrest, [courts] have generally looked to the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003).  The same standard applies to false imprisonment, *see Rutigliano*

---

[7] Given the Court's ruling on Plaintiff's First Amendment claims and the specific facts at issue here, it need not consider whether an exception might exist to *Nieves*' probable-cause defense in situations where an officer has probable cause to arrest, but where that probable cause would not have been discovered but for prior retaliatory conduct.

*v. City of New York*, 326 Fed. App'x 5, 7 (2d Cir. 2009); indeed, "[f]alse arrest is simply false imprisonment accomplished by means of an unlawful arrest," *Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007). A false arrest "may be complete without . . . a formal arrest," so long as an individual "is restrained and his freedom of movement is restricted." *Posr v. Doherty*, 944 F.2d 91, 96, 98 (2d Cir. 1991); *see Vasquez v. Pampena*, No. 08-cv-4184 (JG), 2009 WL 1373591, at *2 (E.D.N.Y. May 18, 2009) ("Although complaints involving police detention are commonly referred to as 'false arrest' claims . . . the Fourth Amendment . . . bars unreasonable seizures, not merely unreasonable arrests."). Finally, "to prove either a § 1983 or state law claim of malicious prosecution, [a] plaintiff must establish that: (1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice." *Posr*, 944 F.2d at 100. Probable cause is a complete defense to false arrest, false imprisonment, and malicious prosecution under both federal and state law. *See Weyant*, 101 F.3d at 852; *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013); *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010).

As noted above, there is no genuine dispute that probable cause existed to arrest Plaintiff. This defeats Plaintiff's false arrest, false imprisonment, and malicious prosecution claims to the extent they are predicated on the legality of his arrest. *See Weyant*, 101 F.3d at 852; *Gonzalez*, 728 F.3d at 155; *Manganiello*, 612 F.3d at 161-62. Nor is there any evidence of an "intervening fact negating probable cause" such that probable cause would no longer be a complete defense to this aspect of Plaintiff's state law malicious prosecution claim. *Willis v. City of New York*, No. 12-cv-5259 (RA), 2015 WL 556884, at *8 (S.D.N.Y. Feb. 9, 2015).

Plaintiff has also failed to state viable false arrest or false imprisonment claims based on the issuance of the disorderly conduct summons. *See Posr*, 944 F.2d at 98. Although the "issuance of a pre-arraignment, non-felony summons" itself is not a seizure under the Fourth Amendment, *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010), a person is "sufficiently detained for him to have been 'arrested' for purposes of bringing [a] false arrest claim" when he is told to remain in place while an officer writes out a summons, *Amore v. Novarro*, 624 F.3d 522, 532 & n.13 (2d Cir. 2010); *accord Vasquez*, 2009 WL 1373591, at *2 (cited with approval in *Burg*, 591 F.3d at 96 n.3). Moreover, some courts in this Circuit have concluded that a claim for false arrest may arise from an allegedly unlawful seizure, even if the encounter culminates in a lawful arrest that is made on other grounds. *See, e.g.*, *Williams v. County of Nassau*, No. 10-cv-4815 (WFK) (ARL), 2014 WL 4101545, at *6  (E.D.N.Y. Aug. 18, 2014) (dismissing a "false arrest claim to the extent that its factual underpinnings coincide[d] with Plaintiff's guilty plea," but concluding that the plaintiff had a viable "residual false arrest claim based on the seizure of Plaintiff's person prior to the time Defendants claim to have arrested Plaintiff for resisting arrest"); *Torres v. Vasta*, No. 18-cv-8706 (KMK), 2019 WL 4640247, at *7 (S.D.N.Y. Sept. 24, 2019) (allowing a false arrest claim based on an allegedly unlawful "stop, search, and detention" to proceed when it was unclear that the detention was related to a subsequent lawful arrest).[8]  That said, to prevail on such a claim, a plaintiff must plead actual confinement. *See Beck v. City of New York*, No. 12-cv-9231 (RA), 2014 WL 80544, at *2-3 (S.D.N.Y. Jan. 3, 2014) (dismissing a false arrest claim when the plaintiff failed

---

[8] Some courts in this District have concluded that the illegality of an initial stop does not give rise to a false arrest claim where the arrest itself is supported by probable cause.  *Miller v. City of New York*, No. 11-cv-6663 (JSR), 2012 WL 2524248, at *4 (S.D.N.Y. June 26, 2012) ("[T]he mere fact that an arrest would not have occurred but for an unconstitutional stop does not invalidate that arrest."); *Quiller v. Nunez*, No. 16-cv-3202 (ER), 2020 WL 4475267, at *8 (S.D.N.Y. Aug. 3, 2020) (concluding that a false arrest claim failed because "irrespective of the validity of the initial stop and search, [defendant] had probable cause to arrest" (citing *Corso v. City of New York*, No. 17-cv-6096 (NRB), 2018 WL 4538899, at *7 (S.D.N.Y. Sept. 20, 2018))).  But these cases appear to involve challenges to a lawful arrest, not to a stop that was made on grounds distinct from the grounds for the subsequent arrest; they are therefore not inconsistent with *Williams* and *Torres*.

to allege that she was confined while the officers were writing out a summons); *Chepilko v. Bushuyev*, No. 14-cv-6732 (GBD) (GWG), 2016 WL 6407479, at *8 (S.D.N.Y. Oct. 28, 2016), *adopted*, 2016 WL 7106235 (S.D.N.Y. Dec. 5, 2016) (dismissing a false arrest and unlawful stop claim when the plaintiff did "not allege that he was stopped while the tickets were written").

Even on a generous reading of Plaintiff's Amended Complaint, the Court cannot find in it an assertion that Plaintiff was confined while Defendants wrote out the disorderly conduct summons or at any point before he was arrested on the bench warrant.  Plaintiff states that Finney "approached Plaintiff aggressively, accosting him and stating, 'You know what your problem is? You talk too god damn much,'" and then asserts that Finney began "a zealous and uncarefully conducted, unreasonable, searches and seizures [sic] outside the judicial process."  Compl. at 11. Plaintiff also states that "[n]o conditions existing prior to the officers['] stop established reasonable suspicion or probable cause," that "what the officers discovered during their unconstitutional detainment and arrest is not sufficient to establish retroactive probable cause," and that he was "confined against his will."  *Id.* at 12, 15.  But these vague statements are insufficient evidence from which a reasonable jury could find that Plaintiff was confined prior to his arrest.  In other words, even assuming Plaintiff's use of the legal terms "stop" and "confined" is intended to assert that he was confined prior to his arrest, he fails to state any facts that would support those conclusory assertions, such as describing physical restraint or an order from Finney or Streicher to remain in place.  *See Beck*, 2014 WL 80544, at *3 ("Plaintiff[']s allegation that she was confined by Defendants, without more, is simply a legal conclusion.").  Indeed, the summons states—and Plaintiff does not dispute—that Plaintiff "did not leave" the Port Authority Bus Terminal "[a]fter several requests to do so," indicating that Plaintiff was free to leave throughout the encounter before the discovery of the warrant.  *See* Summons.

Finally, Plaintiff cannot maintain a claim for malicious prosecution based on the disorderly conduct prosecution that followed the issuance of the summons.  Although there is a genuine dispute as to whether probable cause existed to issue that summons, Defendants have offered unrebutted evidence that the disorderly conduct proceeding has not terminated at all—much less terminated in Plaintiff's favor—because a bench warrant was issued following his failure to appear and the proceeding remains open.  *See Posr*, 944 F.2d at 100; *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021) (explaining that "malicious prosecution claims . . . require a plaintiff to demonstrate that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence").

Accordingly, summary judgment is granted on Plaintiff's false arrest, false imprisonment, and malicious prosecution claims.

### C.    Summary Judgment Is Granted on Plaintiff's Claim that His Possessions Were Unlawfully Searched and Seized

Plaintiff next asserts that Defendants "searched and seized Plaintiff's violin case, his manuscript papers, copyright form VA, and person/wallet without reason/cause."  Compl. at 13. The Court construes this as an allegation that, independent from the legality of Plaintiff's arrest, Defendants' search and seizure of his personal property was not justified.  The Court finds that Plaintiff has failed to raise a genuine issue of fact on this claim as well, and therefore grants summary judgment.

A lawful arrest "permits the police to search a . . . person and areas within his immediate control."  *United States v. Peters*, 843 Fed. App'x 369, 371 (2d Cir. 2021) (quoting *Smith v. Ohio*, 494 U.S. 541, 543 (1990)).  This search incident to arrest exception is grounded in two justifications: officer safety and preservation of evidence.  *Riley v. California*, 573 U.S. 373, 384 (2014.  Searches incident to arrest are strictly limited in time and space: "[o]nce law enforcement

officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *United States v. Chadwick*, 433 U.S. 1, 15 (1977), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). Moreover, because Plaintiff was arrested for failure to appear on a charge of theft of services (specifically, fare-beating) that had allegedly occurred years ago, the evidence-preservation justification is inapplicable. *See United States v. Cancel*, 167 F. Supp. 3d 584, 592 (S.D.N.Y. 2016) ("[T]he search of Cancel's bag at the time of his arrest could not have been justified by a need to prevent the destruction of evidence, because Cancel was under arrest for theft of services and there was no basis to believe there could be evidence of that crime in the bag.") (citing *Arizona v. Gant*, 556 U.S. 332, 343 (2009)).

After a lawful arrest, officers may also "impound [an individual's] personal effects . . . to ensure the safety of those effects or to remove nuisances from the area." *United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993). Inventory searches of that property "are constitutional under the Fourth Amendment because they serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *United States v. Mendez*, 315 F.3d 132, 137 (2d Cir. 2002). Although such searches are usually conducted at police stations, the Fourth Amendment does not require they occur at any particular location. *See id.* at 137 n.3. However, "law enforcement officials may open closed containers as part of an inventory search" only if "they act in good faith pursuant to standardized criteria . . . or established routine." *Id.* at 137. "The existence of such a valid procedure may be proven by reference to . . . written rules and regulations." *Id.*

19

Because Plaintiff was lawfully arrested, the seizure of the property on and around his person was a reasonable impoundment. But *searches* of that property would be justified only if they were searches of the areas in Plaintiff's immediate reach for officer safety purposes or if they were inventory searches that followed standard Port Authority Police Department practices. Defendants have offered evidence that the search of Plaintiff's possessions was not only authorized, but required, by Port Authority's standardized rules governing post-arrest procedures:

> [i]tems lawfully carried on the arrested person and confiscated during the search at the police facility, on the basis that the items might be used as a weapon or cause injury to the arrested person, police or other arrested persons, or, could possibly deface or damage property, or which could facilitate escape, will be removed from the arrested person and recorded on PA Form 2749 (Personal Property Inventory).

Supplemental Letter Ex. B at 3. In addition to those potentially dangerous items, "[a]ll . . . wallets will be removed and examined." *Id.* at 2. In light of this unrebutted evidence establishing the criteria governing Port Authority inventory searches, Plaintiff's vague and conclusory allegation that Defendants searched and seized his possessions "without reason/cause" is an insufficient basis for a jury to reasonably conclude that the search of Plaintiff's property was unlawful. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

### D.    Summary Judgment Is Granted on Plaintiff's Due Process Claim

Plaintiff further asserts that he was deprived of "liberty" and "property" without due process. Compl. at 13-14. Construing this as a substantive due process claim, the factual allegations supporting this claim are the same as those underlying Plaintiff's Fourth Amendment claims: namely, his arrest and the search and seizure of his property. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort

of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality op.).  Here, the Fourth Amendment governs the conduct on which Plaintiff rests his substantive due process claim: his "seizure" and the "procedures applied during some period following [the] arrest." *See Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005). Accordingly, summary judgment is granted on this claim.[9]

### E.    Summary Judgment Is Granted on Plaintiff's Equal Protection Claims

The Court finds that summary judgment is also warranted on Plaintiff's claim that he was discriminated against on the basis of his race, religion, and socioeconomic status—a claim which the Court construes as alleging selective enforcement.

To "establish a violation of equal protection based on selective enforcement, the plaintiff must ordinarily show [that] (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d

---

[9] Plaintiff cites caselaw establishing the due process right to refuse unwanted medical treatment. *See* Opp. MOL at 4 (citing *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990), and *Washington v. Harper*, 494 U.S. 210, 221 (1990)).  But given that he does not allege that any of the remaining Defendants administered medical treatment without his consent, these cases are inapplicable.

Although a fair reading of Plaintiff's Amended Complaint could include a procedural due process claim that is based on the same allegations underlying his Fourth Amendment claims, the dismissal of those claims mandates dismissal of any related procedural due process claim. *See Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017); *Manigault v. City of New York*, No. 11-cv-4307 (AJN), 2012 WL 13049173, at *5 (S.D.N.Y. Apr. 19, 2012) (describing cases "dismiss[ing] a procedural due process claim . . . because . . . [it] is duplicative of another claim that was already dismissed on independent legal grounds"); *Chunn v. Amtrak*, No. 14-cv-6140 (PAC) (HBP), 2017 WL 9538164, at *6 (S.D.N.Y. May 11, 2017), *adopted by* 2017 WL 4342142, *aff'd*, 916 F.3d 204 (2d Cir. 2019) (concluding that no procedural due process claim could lie for a lawful property seizure incident to arrest).  Nor does Plaintiff allege that Defendants unlawfully retained or destroyed his property. *Cf. Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012) ("To the extent the Constitution affords . . . any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process.").  Therefore, summary judgment is granted on any procedural due process claim Plaintiff may have raised.

Cir. 1999).  The existence of an "impermissible motive" is "key" to such claims.  *Id.* at 17.  Plaintiff alleges that he was engaging in religious worship when Finney approached him and told him that he "talk[ed] too god damn much," and claims that Finney's "intentions were to willfully disturb and interrupt the Plaintiff's assemblage met for religious worship."  Compl. at 11-12.  Defendants assert that Plaintiff was instead "yelling and cursing" at Finney.  The Court may not, of course, simply credit Defendants' version of the facts on summary judgment.  *Fischl*, 128 F.3d at 55.  But even accepting Plaintiff's assertion, he offers no evidence supporting the conclusion that it was the religious nature of his speech, his race, or his socioeconomic status that motivated Defendants' actions.  Moreover, Plaintiff fails to allege any facts indicating that he was treated differently from others.  *See Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004) ("A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated.").  Given these evidentiary deficiencies, the Court concludes that no reasonable jury could find that Plaintiff was selectively treated on the basis of these characteristics.  *See Gallo*, 22 F.3d at 1224.

F.     **Summary Judgment Is Granted on Plaintiff's Remaining Claims**

The Court now turns briefly to Plaintiff's remaining claims, none of which survive summary judgment.

Plaintiff's Double Jeopardy claim is dismissed.  The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal" or "after conviction" and also "protects against multiple punishments for the same offense."  *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006).  The Court understands Plaintiff to be alleging he was put in double jeopardy by being arrested on a warrant for a charge that had already "been dismissed."  Compl. at 3.  But, as stated above, it cannot be genuinely disputed that this charge was still pending when

Plaintiff was arrested for it.  Moreover, at no point during either the 2013 proceedings or the 2019 proceedings did Plaintiff "face[] the risk of a determination of guilt" through "findings of facts on the merits"; this means that jeopardy never attached once, much less twice, in connection with this charge.  *United States v. Dionisio*, 503 F.3d 78, 83 (2d Cir. 2007); *see id.* (explaining that whether jeopardy attaches during a dismissal turns on whether "the dismissal actually represented a resolution, correct or not, of some or all of the factual elements of the offense charged").

Plaintiff's Eighth Amendment claims are also dismissed.  Plaintiff asserts he "was cruelly and unusually punished" and that "excessive bail was imposed by incarcerating Plaintiff for 11 days without a bail being set."  Compl. at 14.  The Cruel and Unusual Punishment Clause, however, applies only to convicted individuals.  *See Weyant*, 101 F.3d at 856.  Because Plaintiff does not allege that he was ever convicted of any offense, he may not rely on this provision.  Plaintiff's claim of excessive pre-bail detention implicates due process principles rather than Eighth Amendment principles.  Regardless, his allegations are blatantly contradicted by the record such that no reasonable jury could find for him: court records indicate that he was presented one day after his arrest, at which point the judge remanded him pending the § 730.30 determination.  Case Records at 2.  To the extent Plaintiff instead intends to allege excessive detention between that hearing and the May 2 dismissal, such a claim may not be raised against Defendants because "[i]t is the court that is responsible for deciding whether and for how a defendant may be detained, not the defendant police officers."  *Wilson v. City of New York*, 480 Fed. App'x 592, 594 (2d Cir. 2012).

Plaintiff's Sixth Amendment claims are similarly dismissed.  The Amended Complaint challenges Plaintiff's representation in court and prosecutors' conduct.  *See* Compl. at 14 (alleging that "Plaintiff was transferred out of district"; that "Plaintiff was given assistance of 'counsel' . . .

who was later revealed as an investigator for the People of the State of [New York]"; and that "the People of the State intentionally kept the charges from Plaintiff").  But again, none of these factual allegations mention or otherwise implicate the remaining Defendants' personal involvement.

Plaintiff's Eleventh Amendment claims are also dismissed.  The Eleventh Amendment prohibits citizens from suing states, U.S. Const. Amend. XI; it does not accord any procedural or substantive rights to individuals.

Plaintiff's Lanham Act claims are likewise dismissed.  The Lanham Act protects the rightful owners of trademarks from infringement of those marks.  15 U.S.C. §§ 1051 *et seq.*  It does not protect non-owner individuals who are purportedly confused by an infringing mark.

Plaintiff's RICO and Hobbs Act claims are dismissed as well.  The allegations that Defendants stole a $2 bill and violated Plaintiff's rights "to promote themselves in their gang of tortfeasors and charlatans," Compl. at 15, do not suffice as evidence from which a jury may reasonably find that Defendants engaged in either RICO racketeering or Hobbs Act extortion.  *See Viacom Int'l Inc. v. Icahn*, 747 F. Supp. 205, 209 (S.D.N.Y. 1990); 18 U.S.C. § 1951(b)(2).

Finally, the Court must also grant summary judgment on Plaintiff's slander claim.  Plaintiff alleges that Defendants told other individuals "that Plaintiff was a guilty criminal and a faggot." Compl. at 15.[10]  Slander constitutes "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander *per se*, and (vii) not protected by privilege."  *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001).

---

[10] Defendants contend that Plaintiff has failed to establish any element of slander, but this argument rests on the faulty assumption that Plaintiff's Amended Complaint may not be taken as evidence.  *See Gayle*, 313 F.3d at 682; *Neal*, 2017 WL 4129635, at *7.

"[S]pecial harm" means the loss of something having economic or pecuniary value." *Id.* at 271. Because Plaintiff does not allege special harm, he can rely only on slander *per se*.

A false statement constitutes slander *per se* when it "is so egregious that it is presumed to cause serious harm." *Stern v. Cosby*, 645 F. Supp. 2d 258, 272 (S.D.N.Y. 2009) (citing *Sharratt v. Hickey*, 20 A.D.3d 734, 735 (N.Y. App. Div. 3d Dep't 2005)). One category of slander *per se* consists of statements that "charge the plaintiff with a serious crime." *Albert*, 239 F.3d at 271. However, "the law distinguishes between serious and relatively minor offenses, and only statements regarding the former are actionable without proof of damage." *Liberman v. Gelstein*, 605 N.E.2d 344, 348 (N.Y. 1992). Under this standard, the offense of which Defendants allegedly accused Plaintiff—fare-beating—is not a serious offense and therefore cannot constitute the basis for slander *per se*. *Cf. id.* ("Harassment is a relatively minor offense in the New York Penal Law . . . and thus the harm to the reputation of a person falsely accused of committing harassment would be correspondingly insubstantial."); *Kennedy v. City of New York*, No. 12-cv-4166 (KPF), 2015 WL 6442237, at *13 (S.D.N.Y. Oct. 23, 2015) (concluding that criminal mischief is likely not a serious crime); *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 171 n.6 (E.D.N.Y. 2014) ("Commission of a misdemeanor usually does not rise to the level of a serious crime for purposes of a defamation *per se* claim.").

Plaintiff also alleges that Defendants told others that Plaintiff was a "faggot." There is a split of authority in this District as to whether a false statement about an individual's sexual orientation constitutes slander *per se* under New York law on the ground that it exposes an individual to widespread contempt, scorn, or ridicule. *Compare Gallo v. Alitalia–Linee Aeree Italiane–Societa per Azioni*, 585 F. Supp. 2d 520, 549-50 (S.D.N.Y. 2008), *with Stern*, 645 F. Supp. 2d at 273-75. The Court need not enter this debate. Falsity is a requisite element of slander, and

Plaintiff has never alleged that Defendants' purported statement about Plaintiff's sexual orientation was false.  Thus, although the Court finds the use of such slurs abhorrent—particularly by those in positions of authority—even assuming the veracity of Plaintiff's allegations, he has failed to produce evidence from which a reasonable jury could find that Defendants committed slander.

## III.    Plaintiff's Requests to Reopen Discovery and to Amend the Complaint Are Denied

The Court denies Plaintiff's request to reopen discovery "to ask questions of" Tortorice and Streicher, such as "what was Plaintiff yelling?" and "[h]ow long was he yelling for?"  Opp. MOL at 4.  A "party seeking to reopen discovery must show why the court's deadlines could not reasonably have been made despite its diligence."  *King v. Friend of Farmer, Inc.*, 2000 WL 290355, at *1 (S.D.N.Y. Mar. 21, 2000).  Plaintiff has not explained why he was unable to request the sought information during discovery, besides referring to his *in forma pauperis* status.  While the Court is sympathetic to the difficulties of prosecuting a case *pro se* and without adequate funds, Plaintiff has not explained how his financial situation prevented him from timely sending interrogatories.  Moreover, Defendants have provided abundant evidence that Plaintiff refused to cooperate in the discovery process, indicating Plaintiff's lack of diligence.  *See* Opp. to Mot. to Preclude Exs. N, R, T (letters describing Plaintiff's failure to respond to discovery requests).

Lastly, the Court denies Plaintiff's request to further amend his complaint.  Because "Plaintiff has not even suggested that additional facts would be alleged in any subsequent second amended complaint . . . providing Plaintiff with an additional opportunity to amend would be an exercise in futility."  *Duckett v. Williams*, 86 F. Supp. 3d 268, 276 (S.D.N.Y. 2015); *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [he] fails to specify . . . how amendment would cure the pleading deficiencies in [his] complaint.").  Even if Plaintiff could plead facts that would preclude summary

judgment on his dismissed claims, amendment at this late stage would be unduly prejudicial to Defendants.  *See CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F. Supp. 158, 167 (S.D.N.Y. 1990) ("When the motion [to amend] is made after discovery has been completed and a motion for summary judgment has been filed, leave to amend is particularly disfavored because of the resultant prejudice to defendant.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to preclude evidence is denied and Defendants' motion for summary judgment is granted in part and denied in part.  The Clerk of Court is respectfully directed to terminate the motions at docket numbers 48 and 49 and to terminate Tortorice from the docket.  By separate order, this case is referred to the assigned magistrate judge for a settlement conference.  The Court defers ruling on Plaintiff's request for counsel pending the outcome of that conference.  The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: March 23, 2022
New York, New York

_____
Hon. Ronnie Abrams
United States District Judge